# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:08CR00040 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| TRAVIS DELL JONES, a/k/a ERIC ) | By: James P. Jones |
| DELL DOWNEY, ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Paul G. Beers, Glenn, Feldmann, Darby & Goodlatte, Roanoke, Virginia, for Defendant.*

In this criminal case, the defendant, convicted by a jury of being a participant in a drug trafficking conspiracy, has filed a post-trial motion seeking acquittal or a new trial. For the reasons that follow, I will deny the motion.

I

The defendant Travis Dell Jones was convicted by a jury of knowingly conspiring with others to distribute and to possess with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C.A. § 841(a)(1) (West 1999). At trial, the government contended that the defendant was a member of a large multistate drug

trafficking conspiracy. The defendant argued that although he admittedly purchased and sold cocaine, he was not part of the conspiracy alleged in the Indictment.

In the post-trial motion currently before the court, the defendant argues that the government presented insufficient evidence for the jury to find beyond a reasonable doubt that he participated in the conspiracy alleged in the Indictment.

II

The evidence adduced at trial was more than sufficient for a reasonable jury to convict the defendant beyond a reasonable doubt. Therefore, I will deny the defendant's Motion for Judgment of Acquittal, or, in the Alternative, for a New Trial.

The conviction must be sustained if, viewed in the light most favorable to the government, there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942), *superseded by statute on other grounds as recognized in Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987). I must determine "whether *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Capers*, 61 F.3d 1100, 1107 (4th Cir. 1995) (internal quotation marks and alternations omitted).

Though a motion for a new trial may also be based on insufficient evidence, "a court should exercise its discretion to grant a new trial sparingly, and . . . it should do

so only when the evidence weighs heavily against the verdict." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (internal quotation marks omitted).

The defendant argues that there was insufficient evidence to convict him for involvement in the single drug conspiracy charged in the Indictment.[1] To prove a conspiracy, "'the government must show, first, that a conspiracy existed; then, that the defendant had knowledge of the conspiracy; and finally, that the defendant voluntarily became a part of the conspiracy.'" *Capers*, 61 F.3d at 1107 (quoting *United States v. Bell*, 954 F.2d 232, 236 (4th Cir. 1992)).

As the Fourth Circuit has explained, "a single conspiracy exists when the conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product." *Id.* (internal quotation marks omitted). Furthermore, "'one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities.'" *Id.* at 1108 (quoting *United States v. Banks*, 10 F.3d 1044, 1054

---

[1] The defendant was initially charged in an indictment along with fifty other named defendants, including Derrick Evans, Kerry Lee, Oedipus Mumphrey, Reginald Morton, and Emmanuel Morton. Due to a violation of the Interstate Agreement on Detainers Act, the original indictment was dismissed as to Jones without prejudice. *United States v. Jones*, No. 1:08CR00024-51, 2008 WL 4279963 (W.D. Va. Sept.12, 2008). The United States obtained a new indictment against the defendant on September 24, 2008. Although the new indictment does not list the alleged co-conspirators, the government stipulated that Jones was charged with the same conspiracy as alleged in the original indictment.

- 3 -

Case 1:08-cr-00040-JPJ   Document 99   Filed 02/12/09   Page 3 of 12   Pageid#: 528

(4th Cir. 1993)).  Indeed, there must only be "a slight connection between the defendant and the conspiracy to support conviction." *United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir. 1992).  Willful and knowledgeable participation in a conspiracy on only one occasion is sufficient to convict a defendant, even if he played a minor role.  *United States v. Roberts*, 881 F.2d 95, 101 (4th Cir. 1989).

The defendant notes that there were two major pieces of evidence against him presented at trial: (1) the testimony of Emmanuel Morton that on a single occasion he and Jones had worked as a team selling drugs out of the same hotel room, and (2) Jones's statement to federal and state law enforcement officers on March 24, 2008, that Reginald Morton had supplied him with approximately one ounce of cocaine each week for a year.  The defendant argues that neither piece of evidence is sufficient to establish beyond a reasonable doubt that he was guilty of the conspiracy charged in the Indictment.

I find that there was substantial evidence from which the jury could conclude beyond a reasonable doubt that the defendant participated in the conspiracy alleged in the Indictment.

Emmanuel Morton, one of the defendants charged with conspiracy,[2] testified that sometime in 2007, he and Jones "had [a] room together" at a Howard Johnson motel for the purposes of distributing cocaine from the room. (Trial Tr. vol. 2, 112, Dec. 16, 2008.) The defendant argues that this testimony did not establish that Morton and Jones had been working together because Morton testified that he and Jones had different customers, and that Jones had sold crack, whereas Morton had sold powder cocaine. Morton also testified that Jones had not been acting as his employee. However, Morton explicitly said that he and Jones had been working as a "team." (*Id.* at 113.) He testified, "I'm saying we were together . . . . I knew what he was doing; he knew what I was doing. . . . I'm saying he had my back; I had his back. I watch out for him; he look out for me." (*Id.* at 113-14.) A reasonable jury could conclude that the two men had indeed been working together.

---

[2] Substantial evidence was presented at trial that Emmanuel Morton was part of the charged conspiracy. Oedipus Mumphrey testified that he had brought Emmanuel Morton from Burlington, North Carolina, to the Bristol, Tennessee and Virginia, area "[t]o help me move the cocaine faster." (Trial Tr. vol. 2, 28, Dec. 16, 2008.) Emmanuel Morton himself testified that he had come to the Bristol area with Mumphrey to sell drugs. (*Id.* at 103-04.) Darrell Duty, a lieutenant with the Bristol, Virginia, Police Department, testified that a search of a car at a La Quinta Inn in April 2006, with Emmanuel Morton, Reginald Morton, Oedipus Mumphrey, and others present, had uncovered "all the equipment necessary for the manufacturing of crack cocaine with the exception of the cocaine . . . ." (Trial Tr. vol. 1, 47-48, Dec. 15, 2008.) Mumphrey testified that on that same occasion at the La Quinta Inn, he had "[a]bout a kilo and a half of cocaine," but "[s]omehow the dog didn't smell it. They let us go." (Trial Tr. vol. 2, 31, Dec. 16, 2008.) Jessica Rodriguez testified that Emmanuel Morton, Reginald Morton, Oedipus Mumphrey, and others had met at the La Quinta Inn "to sell drugs." (*Id.* at 82.)

The defendant also attacks this piece of evidence because he and Emmanuel Morton had only allegedly worked together one time at some point in 2007, and the Indictment charges that the defendant participated in the conspiracy "[o]n or about and between January 2006 and April 28, 2008." Clearly, however, Emmanuel Morton's testimony referred to an occasion within the charged dates. And a conspirator need not participate in the full range of activities of the conspiracy. *Capers*, 61 F.3d at 1108. Willful and knowledgeable participation in a conspiracy on only one occasion is sufficient to convict a defendant, even if he played a minor role. *Roberts*, 881 F.2d at 101.

Also, the government's evidence was not limited to Emmanuel Morton's testimony regarding this one occasion. Todd Brewer, a special agent for the Drug Enforcement Administration, testified regarding a statement the defendant made on March 24, 2008.[3] Agent Brewer testified as follows:

> Mr. Jones stated that, that yes, indeed, he had sold crack cocaine; . . . Mr. Jones stated he was from North Carolina, he had been coming up to the Bristol area for approximately three years, and for the last year had used crack cocaine as his main source of income. . . . It was the last year prior, leading up to his arrest in September of 2007. . . . So, he stated . . . his main, his sole source of supply was Reginald Morton, and that

---

[3] I previously held that this statement was voluntary and denied the defendant's suppression motion. *United States v. Jones*, No. 1:08CR00040, 2008 WL 5186968 (W.D. Va. Dec. 10, 2008). I also denied a motion for reconsideration of the Motion to Suppress. *United States v. Jones*, No. 1:08CR00040, 2008 WL 5204470 (W.D. Va. Dec. 12, 2008).

- 6 -

> Mr. Morton had supplied him with approximately an ounce of crack cocaine a week for the full year. I remember asking him, you realize there's about 52 weeks in a year, that would be about 52 ounces, and he, and he said yeah, that's about right.

(Trial Tr. vol. 2, 137-38, Dec. 16, 2008.)

The defendant points out that in his statement, he did not specifically confess to being a member of a conspiracy directed by Derrick Evans, Kerry Lee, or Oedipus Mumphrey. Regardless, the statement was relevant, probative evidence of Jones's involvement in the charged conspiracy. Oedipus Mumphrey, one of the alleged leaders of the conspiracy,[4] testified at trial that he had brought Reginald Morton from Burlington, North Carolina, to the Bristol, Virginia and Tennessee, area "[t]o help me move the cocaine faster." (Trial Tr. vol. 2, 27-28, Dec. 16, 2008.)[5] Reginald Morton,

---

[4] Substantial evidence presented at trial indicated that Oedipus Mumphrey had a major role in the conspiracy. Derrick Evans testified that Oedipus Mumphrey and Kerry Lee had supplied him with cocaine from around December 2005 until Evans had been arrested in April 2008. (Trial Tr. vol. 1, 22-23, Dec. 15, 2008.) Officer Michael Rutledge testified that he had found Oedipus Mumphrey in possession of $1,225 in U.S. currency during a search on November 30, 2007, at a trailer park in Bristol, Tennessee. (Trial Tr. vol. 2, 9-10, Dec. 16, 2008.) Officer Rutledge also testified that Mumphrey had been in possession of keys to a car that contained "a substantial amount of crack cocaine." (*Id.* at 11.) Mumphrey himself testified that he had come from Burlington, North Carolina, to the Bristol, Virginia and Tennessee, area around the end of 2005 in order to sell crack cocaine and powder cocaine, and that Derrick Evans had introduced him to the Bristol area. (*Id.* at 20, 22.) Mumphrey also testified that he had supplied multiple people with cocaine. (*Id.* at 29.)

[5] This testimony was corroborated by testimony from Derrick Evans, who stated that Reginald Morton had come from Burlington, North Carolina, to the Bristol, Tennessee and Virginia, area with Oedipus Mumphrey to sell drugs, and that Reginald Morton and Mumphrey had sold drugs in a trailer park in Bristol, Tennessee. (Trial Tr. vol. 1, 28-29,

- 7 -

Emmanuel Morton, and others would receive cocaine from Mumphrey, sell the cocaine, and then return to pay Mumphrey or someone else Mumphrey worked with "what they owed." (*Id.* at 29.) Mumphrey testified that later on, he and Reginald Morton had sold cocaine in the same trailer park, and Morton had been "pretty much independent at that time" and had a different set of clientele, but Mumphrey had continued to sell cocaine to Morton for subsequent distribution. (*Id.* at 33.) Jones confessed in his statement to purchasing a large quantity of crack cocaine from Reginald Morton, which he would later sell. Jones's statement therefore established a direct link between Jones and other members of the charged conspiracy.

The defendant argues that his March 24 statement merely establishes a buyer-seller relationship between him and Reginald Morton, and that such a buyer-seller relationship is not sufficient to establish membership in a drug conspiracy. The defendant cites cases from other circuits in support of this theory. *See United States*

---

Dec. 15, 2008.) Emmanuel Morton also testified that he and Reginald Morton had come to Bristol with Mumphrey in order to sell drugs. (Trial Tr. vol. 2, 103-04, Dec. 16, 2008.) Timothy Norton testified that he had purchased cocaine from Reginald Morton at a trailer park in Bristol, Tennessee, about twenty-five times. (*Id.* at 92-94.) Jessica Rodriguez, Reginald's girlfriend, testified that she had been in a hotel room in Bristol in February 2006 with Reginald Morton and Oedipus Mumphrey, and she had observed people purchasing cocaine. (*Id.* at 75-77.) Rodriguez also testified that at Reginald Morton's request, she had sometimes met with people to sell crack cocaine to them. (*Id.* at 78.) Officer Jeremiah Hein testified that he had found Reginald Morton in possession of $17,000 in U.S. currency during a search on February 19, 2008. (Trial Tr. vol. 1, 56-59, Dec. 15, 2008.)

*v. Hawkins*, 547 F.3d 66, 74 (2d Cir. 2008); *United States v. Mims*, 92 F.3d 461, 465 (7th Cir. 1996).

But in *United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008), the Fourth Circuit observed that evidence of a buyer-seller relationship involving substantial quantities of drugs and large amounts of money could support a "'reasonable inference'" that the parties "were distributing drugs together" as co-conspirators. And even the cases that the defendant cites indicate that circumstantial evidence surrounding the buyer-seller relationship can "support taking the step from knowledge to intent and agreement." *Hawkins*, 547 F.3d at 74 (internal quotation marks and alterations omitted). Such evidence may include "whether there was prolonged cooperation between the parties, a level of mutual trust, standardized dealings, sales on credit ('fronting'), and the quantity of drugs involved." *Id.* (internal quotation marks omitted); *see also Mims*, 92 F.3d at 465 (stating that although "a buyer-seller relationship alone is insufficient to prove a conspiracy," purchase of drugs for resale "is *evidence* of a conspiratorial agreement (especially when the purchases are repeated as they were here)"). Jones confessed to purchasing about an ounce of cocaine from Reginald Morton every week for approximately one year. The prolonged cooperation, standardized dealings, and large quantities

involved in these sales serve as circumstantial evidence of an agreement, or conspiracy, between the parties involved.

The defendant also argues that his statement could not support a conviction because it was uncorroborated. *See United States v. Stephens*, 482 F.3d 669, 673 (4th Cir. 2007) (reversing a drug conspiracy conviction for lack of corroboration of defendant's incriminating statement to officers). But in fact, there was corroborating evidence. There was substantial evidence that Reginald Morton had sold cocaine in the Bristol, Tennessee and Virginia, area.[6] There was also other evidence presented during the trial linking the defendant to the drug distribution conspiracy charged in the Indictment. The jury could consider the defendant's incriminating statement in conjunction with Emmanuel Morton's testimony and evidence identifying both Emmanuel Morton and Reginald Morton as members of the charged conspiracy.

The defendant argues that the evidence against him was rebutted by testimony from witnesses who supposedly stated affirmatively that Jones was not a member of the conspiracy. Actually, no witness stated affirmatively that Jones was not a member of the conspiracy; rather, three witnesses stated that they knew the defendant from back home in Burlington, North Carolina, and not from the drug trade in Bristol.

---

[6] *See supra* note 6.

At trial, when asked about the defendant Travis Jones, Derrick Evans said, "Me and his older brother was good friends. We used to watch him go play football, basketball. . . . I didn't even expect him to be in the case, a situation like this, because last time I seen him was . . . he was playing high school ball." (Trial Tr. vol. 1, 30-31, Dec. 15, 2008.) Kerry Lee testified, "I only met Travis through playing basketball in the late nineties. We used to play ball at the same gym." (*Id.* at 40.) Oedipus Mumphrey said he knew Travis "[f]rom playing basketball with him." (Trial Tr. vol. 2, 21, Dec. 16, 2008.)

This testimony does not contradict any of the evidence against the defendant. The evidence suggested, and it was the government's theory, that the defendant had purchased drugs from Reginald Morton on a regular basis, and at one point had sold drugs together with Emmanuel Morton. There was no evidence nor any suggestion that the defendant had worked directly with Derrick Evans, Kerry Lee, Oedipus Mumphrey, or various other witnesses who testified during the trial. As noted above, it is not necessary that a member of a conspiracy know or be aware of all of its members, or that he take part in the full range of the conspiracy's activities. *Capers*, 61 F.3d at 1108.

I find that there was substantial evidence to prove beyond a reasonable doubt that the defendant participated in the conspiracy alleged in the Indictment.

III

For the foregoing reasons, it is **ORDERED** that the defendant's Motion for Judgment of Acquittal or, in the Alternative, for a New Trial is DENIED.

        ENTER: February 12, 2009

        /s/ JAMES P. JONES
        Chief United States District Judge